**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PAIN TREATMENT CENTERS ) | |
| OF ILLINOIS and DR. FARIS ABUSHARIF, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 15-cv-01012 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| SPECTRALAB SCIENTIFIC, ) | |
| INCORPORATED, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

In June 2014, Plaintiffs Pain Treatment Centers of Illinois and Dr. Faris Abusharif entered into an agreement with Defendant SpectraLab Scientific, Inc. ("SpectraLab") to purchase a medical device. According to Plaintiffs, upon delivery of the device they discovered that it did not function properly. Plaintiffs requested that SpectraLab repair the device but SpectraLab refused to do so. Plaintiffs have now brought suit against SpectraLab alleging state common law causes of action for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. Before the Court is SpectraLab's motion to dismiss all of those claims pursuant to the arbitration clause in the invoice that it provided to Plaintiffs. (Dkt. No. 6.) For the reasons stated below, the Court finds that the arbitration clause is valid and grants SpectraLab's motion to dismiss this case for improper venue.

**BACKGROUND**

As set forth in the Complaint,[1] Plaintiffs purchased an integrated system of medical devices known as the Sciex System from SpectraLab, a Canadian manufacturer. (Compl. ¶ 7, Dkt. No. 1.) The Sciex System allows a user to screen, identify, and quantitate proteins in a single analysis, which reduces test times and increases the amount of information derived from each test. (*Id.* ¶ 8.)

On June 14, 2014, Plaintiffs filled out a questionnaire on SpectraLab's website, seeking more information on the Sciex System. (Def.'s Reply Ex. 1 at Ex. B p. 4–5, Dkt. No. 11-1.) The following day, Jack Sun, Director of Sales for SpectraLab, emailed Plaintiffs informal pricing for three different machines. Plaintiffs expressed interest in the API 4000 Sciex System. On June 16, 2014, Sun emailed Plaintiffs with a detailed quote for the API 4000.[2] (*Id.* at Ex. A.) On June 18, 2014, two additional quotes for the same API 4000 were sent to Plaintiffs. (*Id.* at Exs. B and C.) On June 23, 2014, the parties entered into an agreement regarding Plaintiffs' purchase, which is reflected in the invoice provided to Plaintiffs by SpectraLab ("Agreement"). (Compl. ¶ 7, Dkt. No. 1; Compl. Ex. A, Dkt. No. 1-1.) Each of the three quotes and the invoice contained a section with general terms, including identical arbitration clauses.

After installation, the API 4000 purchased by Plaintiffs failed to function properly, and Plaintiffs demanded that SpectraLab replace or repair the API 4000 pursuant to the warranty

---

[1] For purposes of deciding the instant motion, the Court accepts the allegations of the Complaint as true and draws all permissible inferences in Plaintiffs' favor. *See, e.g., Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

[2] According to Sun, "[i]t is a regular course of business and usual practice of [SpectraLab] to generate such emails and quotes as a part of its sales operations and related negotiations." (Def.'s Reply Ex. 1 ¶ 10, Dkt. No. 11-1.)

clause contained in the Agreement.[3] SpectraLab failed to respond to Plaintiffs' demands, which resulted in Plaintiffs filing this lawsuit. SpectraLab now moves to dismiss this case for improper venue based on the arbitration clause in the Agreement. The arbitration clause is located on page two of the Agreement (and all of the initial price quotes) under Section VI, and states as follows:

> 6. Arbitration: Any and all disputes or controversies arising under, out of or in connection with the contract formed by customer's acceptance of this quotation or the sale or performance of the equipment or service shall be resolved by final and binding arbitration in Toronto, Ontario, under the rules of the American Arbitration Association then obtaining. The arbitrators shall have no power to add to, subtract from or modify any of the terms or conditions of this contract. Any award rendered in such arbitration may be enforced by either party in the courts of the province of Ontario, to whose jurisdiction for such purposes SpectraLab and customer each hereby irrevocably consents and submits.

(Compl. Ex. A at 2, Dkt. No. 1-1; Def.'s Reply Ex. 1 at Ex. A p. 6, Ex. B p. 7, Ex. C p. 3, Dkt. No. 11-1.) Plaintiffs claim that the arbitration clause is invalid as substantively and procedurally unconscionable, and ask the Court to invalidate it so that the warranty claims may be litigated here.

**DISCUSSION**

Under Federal Rule of Civil Procedure 12(b)(3), a party may move to dismiss a complaint for improper venue. A court may grant such a motion where the dispute is subject to an arbitration clause contained in a contract. *Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005).

The Federal Arbitration Act ("FAA") provides that an arbitration provision in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In addition, the Supreme Court has held that the FAA has established that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H.*

---
[3] The warranty clause that Plaintiffs sought to invoke was contained in the same section as the arbitration clause that Plaintiffs challenge here.

*Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). The FAA strongly favors arbitration when the parties have agreed to it. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 804 (7th Cir. 2011) (citing 9 U.S.C. §§ 1 *et seq.*).

Federal courts look to state contract law to determine whether an arbitration clause is enforceable. *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 366–67 (7th Cir.1999). "In Illinois, the objective in interpreting a contract is to ascertain and give effect to the intent of the parties. . . .Where the contract's language is plain, the agreement should be enforced as written." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012) (internal quotation marks and citation omitted). Here, the language of the arbitration clause clearly and unambiguously expresses the parties' understanding that disputes are to be resolved by arbitration in Canada. Notably, the exact same arbitration clause was present in all three quotes offered to Plaintiffs prior to the parties' entering into the Agreement (represented by the invoice), and was included in the invoice unchanged. (Compl. Ex. A at 2, Dkt. No. 1-1; Def.'s Reply Ex. 1 at Ex. A p. 6, Ex. B p. 7, Ex. C p. 3, Dkt. No. 11-1.)

Under the FAA, "agreements to arbitrate [may] be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citation omitted). Here, Plaintiffs oppose arbitration on the grounds of unconscionability, both substantive and procedural, and bear the burden of showing that the arbitration clause at issue is unconscionable. *See Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000).

## I. Substantive Unconscionability

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed, asking whether the terms are so one-sided as to oppress or unfairly surprise an innocent party." *Phoenix Ins. Co. v. Rosen,* 949 N.E.2d 639, 647 (Ill. 2011) (internal quotation marks and citation omitted). Under Illinois contact law, parties to a contract do not need to undertake identical obligations for the contract to be fair and enforceable. *S.J. Groves & Sons Co. v. State*, 444 N.E.2d 131, 134 (Ill. 1982) ("[B]oth parties to a contract must be bound for the agreement to be a valid contract. While there must be mutuality of obligation between contracting parties, it is only required to the extent that both parties to an agreement are bound or neither is bound." (internal citations and quotation marks omitted)) *overruled on other grounds by Rossetti Contracting Co., Inc. v. Court of Claims*, 485 N.E.2d 332 (Ill. 1985); *see also Kroll v. Doctor's Assocs., Inc.,* 3 F.3d 1167, 1171 (7th Cir. 1993). Plaintiffs argue that the arbitration clause here is substantively unconscionable for three reasons: (1) lack of specificity of location or entity in arbitration clause, (2) impossibility of compliance, and (3) costs associated with arbitration. None of these arguments is persuasive.

### A. Lack of Specificity of Location or Entity

Plaintiffs first claim that the arbitration clause is invalid because it fails to specify the location of the arbitration proceedings or to identify a particular individual to serve as arbitrator. Plaintiffs fail to cite any case law supporting the proposition that specifying a particular location and arbitrator are required for enforcement of an arbitration clause, however. In fact, no such specificity is required—it is not even necessary that an arbitration clause specify a forum at all, much less that one specify a particular location within a forum. *See, e.g., Felland v. Clifton*, No. 10-cv-664-slc, 2013 WL 3778967, at *1 (W.D. Wis. July 18, 2013) (ordering arbitration to take

place in the forum district because the agreement was silent with respect to the location of the arbitration). Nor is it necessary that an arbitration clause identify a particular individual to serve as arbitrator. *See, e.g.,* 9 U.S.C. § 5, Section 5 (authorizing a court to designate and appoint an arbitrator if one is not named). The arbitration clause states that arbitration will take place in Toronto, Ontario. (Compl. Ex. A at 2, Dkt. No. 1-1). That is sufficient.

### B. Impossibility of Compliance

Plaintiffs next argue that the arbitration clause is substantively unconscionable because Canada did not adopt the American Arbitration Association ("AAA") rules and provisions until 2015, while the parties entered the Agreement, which states that disputes are to be resolved in Canada under the AAA rules, in 2014.[4] Plaintiffs contend that since Canada did not follow the rules of the AAA prior to 2015, the arbitration clause is null and void because it is impossible to comply with it. But Plaintiffs have not produced any evidence that Canadian arbitrators were not able to apply the AAA rules prior to 2015. In fact, even the news alert Plaintiffs cite on this point does not support their argument—it simply states that the international division of the AAA was establishing a new organization to provide dispute resolution services for Canadian domestic disputes. (Pl.'s Resp. Ex. 2 at 1–2, Dkt. No. 10-2.) Furthermore, Plaintiffs' assertion that arbitrators in Canada were not able to apply the AAA rules prior to 2015 appears to be incorrect. *See, e.g., YF Franchise LLC v. Jun Kil An*, No. 14-00496 HG-KSC, 2015 WL 877723 (D. Haw. Feb. 27, 2015) (discussing an arbitration proceeding which was conducted in Ontario, Canada

---

[4] Plaintiffs ask the Court to consider a "news alert" that purportedly supports their argument on this issue. (Pl. Resp. Ex. 2 at 1–2, Dkt. No. 10-2.) "When ruling on a motion to dismiss for improper venue, the district court is not obligated to limit its consideration to the pleadings [or to] convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 801, 809–10 (internal quotation marks and citation omitted, substitution in original).

6

pursuant to AAA rules in 2013). Plaintiffs have failed to persuade the Court on the impossibility of compliance with the arbitration clause.

### C. Costs Associated with Arbitration

Lastly, Plaintiffs argue that the arbitration clause is substantively unconscionable because it makes no mention of the costs associated with proceeding through arbitration. An arbitration clause is not unenforceable merely for failing to mention the costs affiliated with arbitration. *Green Tree Fin.*, 531 U.S. at 80. Instead, when assessing arbitration clauses, courts consider whether arbitration costs will expose the plaintiff to financial hardship. "The party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs." *Sanchez v. CleanNet USA, Inc.*, No. 14 C 2143, 2015 WL 231450, at *5 (N.D. Ill. Jan. 15, 2015). "There is no bright line for determining when the costs associated with arbitration will be prohibitive, but the Seventh Circuit has outlined two pertinent questions: (1) how the party's financial situation will be factored into an assessment of the arbitration costs under this hardship provision, and (2) how the costs will compare between litigating in the courts versus proceeding in arbitration." *Id*. (citing *James v. McDonald Corp.*, 417 F.3d 672, 678–80 (7th Cir. 2005)).

Plaintiffs have not met their burden. Instead of providing the Court with information regarding their financial situation or the anticipated costs of proceeding through arbitration rather than through district court litigation for their case, Plaintiffs have only baldly asserted that they will incur initial filing fees, arbitration fees, and administrative and traveling costs. (*See* Pl. Resp. at 5–6, Dkt. No. 10.) This is insufficient. *Green Tree Fin.,* 531 U.S. at 90–91 (finding mere assertion of potential costs too speculative to justify invalidating an arbitration clause). It is not even clear that arbitration would be more costly to Plaintiffs—for example, the AAA procedures

allow for arbitration costs to be adjusted based on the financial situation of the parties. *Sanchez*, 2015 WL 231450, at *5 (holding arbitration costs would not be prohibitively high because the AAA procedures allow for reduced costs in cases of hardship). Plaintiffs have only offered an unsupported assertion that arbitration may be costly, which is insufficient to show that they would suffer extreme financial hardship if the arbitration clause is found to be enforceable.

## II. Procedural Unconscionability

"Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice." *Frank's Maint. & Eng'g, Inc. v. C. A. Roberts Co.*, 408 N.E.2d 403, 410 (Ill. App. 1980). In Illinois, this includes a term that is so difficult to read, find, or understand, that the party signing is not cognizant of an essential term in the clause. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006). Courts analyze the totality of the circumstances surrounding the transaction, including but not limited to: the manner, method, timing, and format. "While both the conspicuousness of the clause and the negotiations relating to it are important, they are not conclusive factors in determining the issue of unconscionability." *Davis v. Fenton*, 26 F. Supp. 3d 727, 737 (N.D. Ill. 2014) (internal quotation marks and citation omitted). Plaintiffs argue that the arbitration clause in this case is procedurally unconscionable for two reasons: (1) it contains buried or hidden terms, and (2) Plaintiffs lacked the ability to negotiate an essential term. Once again, the Court finds Plaintiffs' arguments unpersuasive.

First, Plaintiffs claim that SpectraLab buried the terms of the arbitration clause in fine print and that SpectraLab never mentioned that there was an arbitration clause at all. However, "[a]n arbitration clause does not need to be emphasized with any special font or typeface to prevent it from being procedurally unconscionable; it just needs to be conspicuous." *Id*. at 738.

Moreover, ignorance of a contract's arbitration clause is "no defense if [the plaintiff] failed to read the contract before signing." *Faulkenberg*, 637 F. 3d at 809. Such is the case here. The arbitration clause is located in the "General Terms" section of the Agreement. The "General Terms" section has a different font from the remainder of the Agreement, but is a consistent font throughout. Each term has a separate paragraph and heading. Section VI is labeled "Arbitration." (*See* Compl. Ex. A at 1–2, Dkt. No. 1-1.) The clause is clearly labeled along with the other general terms, such as "Terms of Warranty," "Service and Repair," and "Return Policy"—it is not buried. *Davis*, 26 F. Supp. 3d at 738 (holding that the arbitration clause at issue was not buried when it was clearly separated as a designated additional clause with a subheading, "making it easy to read"). Plaintiffs' failure to read the arbitration clause in the Agreement (that was also contained in the three initial quotes) is no defense.

Second, Plaintiffs claim that SpectraLab did not provide the invoice to Plaintiffs until after payment was made, which rendered Plaintiffs unable to negotiate the arbitration clause. However, the correspondence between Plaintiffs and SpectraLab prior to the execution of the purchasing invoice clearly demonstrates that Plaintiffs were on notice regarding the arbitration clause. There were three quotes sent to Plaintiffs: one on June 16, 2014 and two on June 18, 2014. The arbitration clause contained in all three quotes was exactly the same as that contained in the Agreement. (*See* Def.'s Reply Ex. 1 at Ex. A p. 6, Ex. B p. 7, Ex. C p. 3, Dkt. No. 11-1; Compl. Ex. A at 2, Dkt. No. 1-1.) Plaintiffs thus had an opportunity to read the arbitration clause during negotiations and failed to raise any issue with the clause. In short, the Court is not persuaded by Plaintiffs' claim that they lacked the ability to negotiate an essential term.

As the arbitration clause in the agreement between the parties is clear and unambiguous, and Plaintiffs have not successfully raised an unconscionability defense, Plaintiffs' claims are

9

dismissed. *See Cont'l Cas. Co. v. Am. Nat. Ins. Co.*, 417 F.3d 727, 735 (7th Cir. 2005) ("We conclude that the issues presented by the complaint are subject to arbitration under the Participation Agreement. Moreover, because the Federal Arbitration Act forbids the district court to compel arbitration outside the confines of the district, the court properly dismissed the action."). The dismissal is without prejudice to the parties contesting the claims through a proper forum, *i.e.*, arbitration.

## CONCLUSION

For the foregoing reasons, SpectraLab's motion to dismiss the complaint for improper venue (Dkt. No. 6) is granted.

ENTERED:

Dated: September 30, 2017

Andrea R. Wood
United States District Judge